FILED

2014 Aug-15  PM 12:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SHANNON SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 2:12-CV-0975-MHH |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

The plaintiff, Shannon Smith, brings this action pursuant to the provisions of 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration denying her application for Supplemental Security Income. Smith timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 42 U.S.C. § 405(g). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

# I.  STANDARD OF REVIEW

The scope of review in this matter is limited.  "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'"  *Riggs v. Soc. Sec. Admin. Comm'r*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's findings.  "Substantial evidence" is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In making this evaluation, the Court may not "reweigh the evidence or decide the facts anew," and the Court must "defer to the ALJ's decision if it is supported by substantial evidence even if the evidence may preponderate against it."  *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 929, 930 (11th Cir. 2013) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards.  If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient analysis to demonstrate that the ALJ conducted a proper legal analysis,

then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## II. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

Social Security regulations outline a five-step process that is used to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). The Commissioner must determine in sequence:

   (1)    whether the claimant is currently engaged in substantial gainful activity;

   (2)    whether the claimant has a severe impairment or combination of impairments;

   (3)    whether the claimant's impairment meets or equals the severity of an impairment in the Listing of Impairments;[1]

   (4)    whether the claimant can perform any of his or her past work; and

---

[1] The Listing of Impairments, ("Listings") found at 20 C.F.R. Part 404, Subpart P, Appendix 1, are used to make determinations of disability based upon the presence of impairments that are considered severe enough to prevent a person from doing any gainful activity. 20 C.F.R. § 404.1525.

(5)    whether there are significant numbers of jobs in the national economy that the claimant can perform.

*Winschel v. Comm'r of Soc. Sec*, 631 F.3d 1176, 1178 (11th Cir. 2011). The evaluation process continues until the Commissioner can determine whether the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant who is doing substantial gainful activity will be found not disabled at step one. 20 C.F.R. §§ 404.1520 (a)(i), 416.920(a)(4)(i). A claimant who does not have a severe impairment will be found not disabled at step two. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A claimant with an impairment that meets or equals one in the Listing of Impairments will be found disabled at step three. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

Prior to considering steps four and five, the Commissioner must assess the claimant's residual functional capacity (RFC), which will be used to determine the claimant's ability to work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant who can perform past relevant work will be found not disabled at step four. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At step five the burden shifts to the Commissioner to show other work the claimant can do. *Foot v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). To satisfy this burden the Commissioner must produce evidence of work in the national economy that the claimant can do based on the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1512(f), 416.912(f). A claimant who can do other work will be found not disabled at step five. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920 (a)(4)(v). A claimant who cannot do other work will be found disabled. *Id.*

In the present case, the Administrative Law Judge (ALJ) determined Smith was not engaged in substantial gainful activity, and found she had the severe impairments of "Substance Addiction disorder, Depression, Human Immunodeficiency Virus (HIV), [and] Obesity." R. 18. The ALJ concluded Smith did not suffer from a listed impairment. R. 18. The ALJ found Smith had the residual functional capacity (RFC) to perform "light work as defined in 20 CFR 416.967(b),except that [she] should only occasionally be required to climb a ladder, rope, scaffold, ramp or stairs and only frequently be required to balance, crouch, stoop, kneel or crawl." R. 21. She was also limited to only occasional exposure to unprotected heights and dangerous equipment or products. R. 21. The ALJ further found Smith had moderate limitations in her ability to work with supervisors and co-workers in interpersonal interaction and discussion; maintain attention to simple tasks; respond appropriately to work pressures; make judgments on simple decisions; and adapt to changes in routine work settings. R. 21. The ALJ found Smith had no past relevant work. R. 22.

When a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical-Vocational Guidelines ("the grids") to establish the presence of other jobs at step five.[2] *Foote*, 67 F.3d at 1558-59. The presence of a non-exertional impairment (such as pain, fatigue, or

---

[2]  The Medical-Vocational Guidelines, found at 20 C.F.R. Part 404, Subpart P, Appendix 2, are used to make determinations of disability based upon vocational factors and the claimant's residual functional capacity when the claimant is unable to perform his vocationally relevant past work. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(a). Such determinations, however, are only conclusive when all of the criteria of a particular rule are met. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(a).

mental illness) also prevents exclusive reliance on the grids. *Id.* at 1559. In such cases "the [Commissioner] must seek expert vocational testimony." *Id.* Based on Smith's RFC and the testimony of a vocational expert (VE), the ALJ found Smith could perform other work in the national economy. R. 22, 74-75. Therefore, the ALJ found she was not disabled at step five of the sequential evaluation framework. R. 23.

### III. FACTUAL BACKGROUND

Smith filed an application for Supplemental Security Income (SSI) on August 19, 2009. R. 16. She was 39 years old at the time of the ALJ's decision, has a high school education, and no past relevant work. R. 22. Smith testified she cannot work because of symptoms caused by depression and HIV. R. 66. She testified that she hears voices, does not like being around people, and has difficulty with concentration and memory. R. 68-69. She also testified that her body hurts all the time because of HIV.[3] R. 68-69.

The medical records show Smith has a long history of treatment for depression, suicidal ideation, and hearing voices while using drugs and alcohol. On June 22, 2008, Smith was seen by Dr. Begue at the UAB Emergency Room reporting "command hallucinations to harm herself." R. 317. Dr. Begue noted Smith was "off of her medications and actively psychotic." R. 318. Her urine drug screen was positive for cocaine. R. 318. She was admitted for inpatient psychiatric services. R. 318.

Smith was also admitted for psychiatric services from September 12, 2008, to September 17, 2008, after reporting depression and hearing voices for several days. R.

---

[3] Smith does not challenge on appeal the ALJ's credibility finding concerning her alleged physical symptoms.

311. The treating doctor noted Smith "drinks two to three bottles of wine per day, and smokes crack cocaine three times a week for 13 years." R. 311. Smith's urine drug screen was positive for cocaine. R. 312. Her discharge diagnosis was "Alcohol and cocaine dependence, substance-induced psychosis and substance-induced depression." R. 311.

Smith was admitted for inpatient psychiatric care from April 27, 2009, to April 30, 2009, after presenting to the emergency room complaining of worsening depression and suicidal ideation. R. 255. She reported drinking three bottles of wine per week, and occasional crack cocaine use. R. 256. She also reported "auditory hallucinations telling her to hurt herself." R. 258. During her stay, it was noted that "she did not present a convincing story of psychotic symptoms," and she was not placed on antipsychotic medications. R. 257. The discharge summary states that "it was discussed with the patient on numerous occasions that her crack cocaine abuse and alcohol abuse was one of the main causes for her mood disorder," and that "[t]he patient agreed." R. 257. Her discharge diagnosis was "Cocaine dependence and alcohol abuse," and "Schizophrenia by history." R. 254.

On June 22, 2009, Smith presented to the UAB emergency room reporting that she was hearing voices, and was admitted for psychiatric care. R. 217. On admission it was noted she was "hard to arouse consistent with a post crack crash." R. 216. She declined residential chemical dependence treatment. R. 216. She was discharged on June 27, 2009, with a final diagnosis of "Mood disorder not otherwise specified," and "Crack cocaine abuse." R. 216.

On August 4, 2009, Smith presented at the UAB emergency department stating that she had "been feeling somewhat depressed for about 4 days and hearing voices." R. 252. Her urine drug screen was positive for cocaine. R. 253.

Smith was admitted to Hill Crest Hospital on August 10, 2009, after reporting "hearing voices telling her hurt herself four days." R. 233. Her urine drug screen was positive for cocaine. R. 234. She was treated with antidepressant and anti psychotic medications, and also received electro convulsive therapy (ECT). R. 235. When she was discharged on August 21, 2009, her diagnosis was "Major Depressive Disorder with Psychosis," and "Cocaine Dependence." R. 233.

On August 29, 2009, Smith was seen at the UAB Hospital emergency department with an injured right forearm. R. 249. During her treatment, she reported that she was suicidal, and "hearing voices that are telling her to slit her wrist." R. 250. Psychiatry was consulted, and she was admitted for psychiatric care on August 31, 2009. R. 251, 281. Smith reported that after she was discharged from Hill Crest Hospital on August 21, "she began using cocaine and wine." R. 281. Smith's urine drug screen was positive for cocaine. R. 283. During her hospital stay, Smith "stated that she was feeling better during her hospital stay and that she just really needed to rest for a couple of days." R. 283. Dr. Huggins also noted that "[d]uring the hospital stay the patient never exhibited any overt signs of psychosis or depression." R. 283. He also noted Smith "gradually improved with a decrease in suicidal ideations and depressive symptoms." R. 283. Dr. Huggins's discharge diagnosis was "Substance induced mood disorder-cocaine, schizophrenia, paranoid." R. 281.

On September 22, 2009, Smith was brought to the UAB Hospital emergency department by the Birmingham Police Department after being arrested and telling the police that she was suicidal. R. 243. Her urine drug screen was positive for cocaine. R. 244. She was examined by Dr. Wang, who noted she was to be evaluated by Psychiatry, and would likely be discharged back to jail on suicide precautions. R. 244. Dr. Wang diagnosed cocaine abuse, history of depression, and history of HIV. R. 280.

On November 21, 2010, Smith was seen at the UAB Hospital emergency department reporting chest pain, and that she had been hearing voices for several days. R. 435. Her urine drug screen was positive for cocaine. R. 426. She reported that she had been released from prison six days previously, after serving an eleven-month sentence. R. 424. She reported that she drank a pint of wine the previous day, and that she could not remember smoking crack cocaine. R. 424. Her primary diagnoses was chest pain, and her secondary diagnoses included "rhabdomyolysis secondary to cocaine use."[4] R. 424.

## IV. ISSUES PRESENTED

Smith argues on appeal 1) that the ALJ did not make clear the weight accorded to each item of evidence and the reasons for his decision; and 2) that the ALJ focused only on the evidence that supported his decision, and did not properly consider evidence of record supporting a finding of disability.

---

[4] Rhabdomyolysis is the "disintegration or dissolution of muscle, associated with excretion of myoglobin in the urine." *Dorland's Illustrated Medical Dictionary* 1637 (32nd Edition).

# V. DISCUSSION

## A.

Smith argues the ALJ's decision contains "only three, one-sentence references to the medical evidence of record." Pl.'s Br. 5. She argues that in this circuit, an "ALJ has a duty to make clear the weight accorded to each item of evidence and the reasons for the decision," and that "a statement that the ALJ carefully considered all the testimony and exhibits is not sufficient." *Id.* at 6 (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).

In *Cowart*, the court found the claimant had not waived her right to be represented by council. *Cowart*, 662 F.2d at 735. Therefore, it found the ALJ had a special duty to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Id.* (quoting *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978)). The court also noted this duty requires the ALJ to be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (quoting *Cox*, 587 F.2d at 991)). In *Cowart*, the court concluded the ALJ had failed to discharge his special duty because he did not clearly indicate the weight he accorded to the various testimony considered. *Id.* The court explained that the ALJ's decision did not allow proper judicial review.

> The decision states only that the ALJ "has carefully considered all of the testimony . . . and exhibits . . . and has given weight to each as he feels should be properly accorded to it." This statement tells us nothing whatsoever – it goes without saying that the ALJ gave the testimony the weight he believed should be accorded to it. What is required is that the ALJ state specifically the weight accorded to each item of evidence and why he reached that decision. In the absence of such a statement, it is

impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.

*Id.*

In *Cowart*, the court was faced with an ALJ's decision that conveyed "nothing whatsoever" as to what evidence the ALJ relied on in reaching his decision. Cases decided after *Cowart* have recognized that if the ALJ's decision contains sufficient discussion of the evidence to allow meaningful judicial review, the ALJ's decision need not refer to every piece of evidence. For example, in *Dyer v. Barnhart*, the court observed that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.'" 395 F.3d 1206, 1211 (11th Cir. 2005) (alterations in original) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)).

The present case does not involve a claimant who was unrepresented at the ALJ hearing or an ALJ decision that contains only a single conclusory statement as to the ALJ's reasoning.  Although the ALJ's discussion of the evidence is brief, it contains several references to the evidence he considered and reveals the rationale behind his decision.  In considering whether Smith's mental impairments met a Listing, the ALJ observed that Smith "reported no problems with mobility, self-care or performing usual activities to an intake counselor in April of 2009 (Exhibit 10F, page 8)."  R. 18.  He also noted Smith "is still able to make her doctor's appointments and is described as pleasant and cooperative by the physicians in reports where she is not currently under the

influence of drugs." R. 19. The ALJ observed that the medical records show Smith "has experienced one to two episodes of decompensation, each of extended duration," when she was "hospitalized for suicidal ideation in connection with drug binges." R. 19. He also observed that Smith "routinely tests positive for cocaine use when she visits the Emergency room." R. 19. The ALJ found that "substantial evidence of records [sic] does not indicate she has been hospitalized in connection with a suicidal episode when she was not using cocaine and/or alcohol after her onset date (Exhibit 5F, page 16; Exhibit 4F, page 3)." R. 19.

The ALJ also addressed the medical evidence when he found that one of Smith's treating doctors "opined that the claimant's mood disorder is substance-induced." R. 22. The ALJ stated that that physician's opinion is given significant weight since it is consistent with the record as a whole, which shows the claimant frequently testing positive for cocaine when she visits the emergency room (Exhibit 10F)." R. 22. Therefore, the ALJ stated that his RFC assessment was "supported by medical opinion stating the claimant's mood disorder is substance induced."[5] R. 22.

At the beginning of Smith's hearing, the ALJ summarized the medical records. R. 64. This shows that he was aware of the relevant medical records not mentioned in his written decision. His citation to specific exhibits and page numbers in his decision also shows that he was aware of, and considered the relevant medical evidence of record.

---

[5] Smith does not argue the ALJ improperly applied the regulations governing the evaluation of substance abuse and alcoholism. *See* 20 C.F.R. § 416.935.

In the present case, the ALJ's discussion of the medical evidence, though brief, is sufficient to allow the court to determine what medical evidence he relied on, and the rationale behind his decision. His written decision provides the court with enough information to allow for meaningful judicial review. Therefore, this case is distinguishable from *Cowart*, and satisfies the requirements of *Dyer*.

Moreover, even if the ALJ's failure to discuss the medical evidence in greater depth was an error, the error is harmless. The medical evidence as a whole does not contradict the ALJ's findings. Thus, even if the ALJ erred in failing to mention that evidence, any error was harmless. When the correction of an ALJ's error on remand would not change his ultimate findings, the ALJ's decision will stand. *Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008) (unpublished) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir.1983)); *Shaw v. Astrue*, 392 F. App'x 684, 687 (11th Cir. 2010) (unpublished) (finding an ALJ's failure to discuss evidence was a harmless error because the evidence did not contradict his RFC finding).

**B.**

Ms. Smith also argues the ALJ focused only on the evidence that supported his decision, and did not properly consider evidence of record supporting a finding of disability. Pl.'s Br. 7. The only medical evidence supporting disability cited by Smith on appeal is a doctor's inclusion of paranoid schizophrenia with his diagnosis of a substance induced mood disorder. Specifically, she argues the ALJ found her mental condition was "solely 'substance-induced mood disorder,'" and omitted the "doctor's inclusion of paranoid schizophrenia as part of her mental condition." Pl.'s Br. 5-6. Smith argues the

ALJ misquoted and did not fairly report the evidence; focused on evidence unfavorable to Smith; and failed to fairly consider all of the medical evidence of record. Pl.'s Br. 7.

An ALJ's decision that "focus[es] upon one aspect of the evidence and ignor[es] other parts of the record" is not supported by substantial evidence. *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Additionally, a remand is "required when an ALJ fails to consider properly a claimant's condition despite evidence in the record of the diagnosis" of a disease that could cause the alleged symptoms. *Vega v. Comm'r of Soc. Sec.* 265 F.3d 1214, 1219 (11th Cir. 2001).

In the present case, the ALJ did not ignore evidence or improperly focus solely on the diagnosis of a substance induced mood disorder by a single doctor. In discussing the weight to be given to medical opinions, the ALJ stated as follows: "Dr. Henry Wang opined that the claimant's mood disorder is substance-induced and his opinion is given significant weight *since it is consistent with the record as a whole*, which shows the claimant frequently testing positive for cocaine when she visits the emergency room (Exhibit 10F)." R. 22 (emphasis added). This statement shows that the ALJ found the doctor's opinion was consistent with the other evidence in the case. A review of Dr. Huggins' treatment note and the other evidence of record shows that the ALJ did not ignore substantial contrary evidence.

The opinion the ALJ relied upon was actually from Dr. Huggins's discharge diagnosis on September 8, 2009.[6] That diagnosis was "Substance induced mood disorder-

_____

[6] Although the ALJ states Dr. Wang is the source of the opinion, it is actually found in the discharge diagnosis of Dr. Huggins. R. 281. (Dr. Wang conducted a physical

cocaine, schizophrenia, paranoid." R. 281. At the time of her admission, Smith reported being suicidal and "hearing voices telling her to 'use a razor to cut my wrists.'" R. 281. However, Dr. Huggins noted that Smith "stated that she was feeling better during her hospital stay and that she just really needed to rest for a couple of days." R. 283. He also noted that "[d]uring the hospital stay the patient never exhibited any overt signs of psychosis or depression." R. 283. Dr. Huggins observed that Smith "gradually improved with a decrease in suicidal ideations and depressive symptoms." R. 283. Therefore, the remainder of Dr. Huggins' treatment note supports the ALJ's finding that a substance induced mood disorder was her primary mental impairment.

Although Dr. Huggins and other doctors diagnosed Smith with either schizophrenia, or a history of schizophrenia, there are no medical records from the relevant time period showing she suffered significant symptoms from that disease. The medical records from Dr. Huggins and other sources in 2009 and 2010 show Smith's treatment was primarily for a mood disorder at times when she was abusing cocaine.

When Smith was hospitalized in April 2009, she was not placed on antipsychotic medications, "did not present a convincing story of psychotic symptoms," and was told that her substance abuse was a main cause of her mood disorder. R.254, 257. When she was hospitalized in June 2009 her condition was "consistent with a post crack crash," and

---

examination of Smith on September 22, 2009, and diagnosed cocaine abuse, history of depression, and history of HIV. R. 280.) Smith implicitly recognizes the ALJ's mistake by arguing the ALJ did not consider the diagnosis of paranoid schizophrenia, which was contained in Dr. Huggins' treatment note. Pl.'s Br. 6. In any event, Smith does not argue on appeal that the ALJ's mistake in naming the source of the opinion is prejudicial, and the court concludes that the error was harmless.

she was diagnosed with a mood disorder and cocaine abuse. R. 216. When Smith presented to the emergency room on August 4, 2009, her drug screen was positive for cocaine, and she was feeling depressed and hearing voices. R. 252-53. When she was discharged from Hill Crest Hospital on August 21, 2009, her diagnoses were Major Depressive Disorder with Psychosis, and Cocaine Dependence. R. 233. When Smith was seen on September 22, 2009, her drug screen was positive for cocaine, and she was diagnosed with cocaine abuse and a history of depression. R. 244. When she was seen in the emergency room on November 21, 2010, her drug screen was positive for cocaine, and her primary diagnosis was chest pain, with a secondary diagnosis of "rhabdomyolysis secondary to cocaine use." R. 424, 426.

Although Smith argues that her schizophrenia was not properly considered, the evidence does not show that it caused significant limitations during the relevant time period. Therefore, the ALJ did not ignore other evidence, or unduly rely on Dr. Huggins' opinion, and substantial evidence in the record supports his decision. Because this court does not reweigh the evidence, there is no reversible error.

## VI. CONCLUSION

The court concludes the ALJ's determination that Smith is not disabled is supported by substantial evidence, and that the ALJ applied the proper legal standards in arriving at this decision. Accordingly, the Commissioner's final decision is due to be affirmed. An appropriate order will be entered.

**DONE** and **ORDERED** this August 15, 2014.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE